UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x
UNITED STATES OF AMERICA,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-12-2023

-against-                                                                              5-cr-517 (LAK)

MANUEL FELIPE SALAZAR-ESPINOSA,

Defendant.
------------------------------------------------x

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

      The defendant, Manuel Salazar-Espinosa, was convicted in 2007 of conspiring to import multi-ton quantities of cocaine into the United States, distributing cocaine knowing and intending that it would be imported into the United States, and conspiring to launder proceeds of narcotics trafficking. He was sentenced principally to 360 months of imprisonment, and has been detained since the time of his arrest in 2005. He now is 72 years old. According to the government, he currently is scheduled to be released in December 2030. The matter now is before the Court on the defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c).

      Mr. Salazar-Espinosa contends that he should be granted compassionate release because he "is suffering from multiple medical issues and health concerns."[1] His most significant

---

[1]  Dkt 195 (Def. Mem.) at 1.

He has been diagnosed with gastroesophageal reflux disease (GERD), hypertension, hypothyroidism, latent tuberculosis, hyperlipidemia, scrotal mass, and osteoarthritis.

When he filed this motion in December 2022, Mr. Salazar-Espinosa focused also on his heightened risk for serious health consequences were he to contract Covid-19. Given that the Court finds that his health needs warrant compassionate release regardless of his chances of being infected with Covid-19, it does not now decide whether and how, if at all, any risk

medical problem is his loss of vision. He was diagnosed with "a swiftly deteriorating stage 4 macula hole in his left eye."[2] Dr. Linda Graves, who submitted a report on his behalf, explained that:

> "Mr. Salazar-Espinoza underwent a barrier laser surgical procedure to his left eye to treat the horseshoe tear of his left retina by Dr. Nelson in February of 2022. Mr. Salazar-Espinoza continued to follow up with Dr. Nelson after the barrier laser procedure. According to Mr. Salazar-Espinoza's records, he later was diagnosed with a stage 4 macular hole, left eye, and multiple retinal defects without detachment by Dr. Nelson. The stage 4 macular hole resulted in significant visual impairment. Because of Mr. Salazar-Espinoza's persisting visual issues, the macular hole and retinal tear, Dr. Nelson recommended surgical intervention. On or about March 8, 2022, Mr. Salazar-Espinoza underwent surgery on his left eye due to stage 4 macular hole and retinal tear by Dr. Nelson. It is highly noteworthy that, at the time of Mr. Salazar-Espinoza's evaluation by Dr. Nelson on April 13, 2021, the visual acuity in his left eye was noted to be 20/200. This degree of visual acuity (20/200) qualifies as legally blind in the patient's left eye."[3]

Dr. Graves noted also that, "[a]lthough [Mr. Salazar-Espinosa] ultimately did receive treatment for his left eye conditions, that treatment was delayed which resulted in a significant deterioration in the vision in his left eye."[4]

Dr. Michael Rosenberg, an ophthalmologist who also submitted a report in support of Mr. Salazar-Espinosa's motion discussed Mr. Salazar-Espinosa's vision problems in greater detail. He stated that:

> "Unfortunately, Mr. Salazar-Espinoza has vision in his left eye of approximately 20/400 corrected as a result of his macula hole. A stage 4 macula hole is an advanced full thickness hole with complete vitreous separation causing loss of central vision. The longer the time from symptoms to repair the worse the prognosis

---

of Covid-19 would affect his motion for compassionate release.

[2] Dkt 219 (Def. Resp. Mem.) at 4.

[3] Dkt 195-1, Ex. A to Def. Mem., Report of Linda M. Graves, M.D., at 3.

[4] Id. at 5-6.

(greater than 6 months the outcomes are far worse). Consequently, the delay of almost one year from April 2021 until ultimate repair on 3/8/2022 certainly had a negative impact on potential visual recovery. Had Mr. Salazar-Espinoza not been confined the required quarantine would have been different and the surgery could have been performed within the 6-month window of best outcomes. Mr. Salazar-Espinoza's inability to effectively manage his self-care was thus demonstrated by the fact that he was unable to schedule surgery within the appropriate six month period dictated by the stage 4 macula hole. This is a deviation from standard best practices."[5]

Dr. Rosenberg noted also that "[a]t this point [Mr. Salazar-Espinosa] needs regular eye exam follow up appointments. As he will definitely require cataract surgery of the left eye in the future . . . he will need close ophthalmic monitoring of the left eye as well as most importantly of his right eye which has an approximately 60% chance of developing a macula hole as well statistically. Therefore, close ophthalmic follow up, timely diagnosis and treatment to prevent bilateral blindness is mandatory."[6] Based on Mr. Salazar-Espinosa's medical conditions, the record of his treatment, and other health-related factors such as his age, both Drs. Graves and Rosenberg opined that Mr. Salazar-Espinoza would be unlikely to receive the medical care he requires if he remained incarcerated and would be unable adequately to self-care.[7]

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court may modify a term of imprisonment upon a defendant's motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [('BOP')] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

---

[5] Dkt 195-2, Ex. B to Def. Mem., Report of Michael Rosenberg, M.D., at 1-2.

[6] Id.

[7] Dkt 195-1, Ex. A to Def. Mem., Report of Linda M. Graves, M.D., at 6; Dkt 195-2, Ex. B to Def. Mem., Report of Michael Rosenberg, M.D., at 2.

4

warden of the defendant's facility, whichever is earlier."[8] "Where the exhaustion requirement is met, a court may modify a defendant's sentence if (1) there are 'extraordinary and compelling reasons' warranting a sentence modification and (2) the modification is supported by the factors set forth in 18 U.S.C. § 3553(a)."[9]

The government argues that Mr. Salazar-Espinosa failed to exhaust his administrative remedies because he did not submit a request for compassionate release to the BOP or to prison officials at USP Atlanta, where he is imprisoned.[10] In a previous case, however, this Court determined that a defendant's "failure to exhaust his administrative remedies is not necessarily dispositive."[11] "The Second Circuit and Supreme Court have held that, in general, 'exhaustion may

---

[8] 18 U.S.C. § 3582(c)(1)(A).

[9] *United States v. Bary*, No. 98-cr-1023 (LAK), 2020 WL 5946985, at *2 (S.D.N.Y. Oct. 7, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). *See also id.* at *2 n.12 ("Federal district courts are not bound by the policy statements issued by the Sentencing Commission.").

[10] Dkt 207 (Govt. Opp. Mem.) at 5.

Mr. Salazar-Espinosa submitted a request for compassionate release to the warden at a previous facility where he was imprisoned, FCI Jesup, in connection with his motion for compassionate release that he filed in February 2020, which the Court denied. The warden denied that request. *See* Dkt 179, Appx. A (defendant's request), Appx. B (warden's denial). In a letter dated March 10, 2023, Mr. Salazar-Espinosa's counsel wrote that Mr. Salazar-Espinosa did "attempt to comply with the administrative process prior to the filing of the instant motion but was thwarted by poor vision, poor health and a redesignation to another institution, and is not sure what actually happened. While he claims that he did submit the appropriate BP8/BP9, a discussion with the government indicates that a record of same with BOP does not exist." Dkt 208 at 1. His counsel requested that his motion for compassionate release be stayed "should the court view defendant's pursuit of administrative process a necessary prerequisite." *Id.* at 2. The Court denied the request for a stay. Dkt 209 at 3.

[11] *Bary*, 2020 WL 5946985, at *1. *See also, e.g., United States v. Scparta*, 567 F. Supp. 3d 416, 426 (S.D.N.Y. 2020) ("In sum, the First Step Act's text, history, and structure all counsel in favor of concluding that the statute's exhaustion requirement is amenable to equitable exceptions.").

5

be unnecessary' if (1) 'it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue,' (2) where 'the administrative process would be incapable of granting adequate relief,' or (3) 'where pursuing agency review would subject plaintiffs to undue prejudice.'"[12] In these circumstances, the Court determines that requiring Mr. Salazar-Espinosa to exhaust his remedies would be futile, unlikely to provide adequate relief, and likely to cause him undue prejudice.[13]

Mr. Salazar-Espinosa's medical conditions – in particular, his loss of vision in one eye and the probability of a vision-threatening condition in the other – combined with his age and other factors establish "extraordinary and compelling reasons" that warrant his release. The delay in repairing his stage 4 macula hole, which "certainly had a negative impact on potential visual recovery" and "resulted in a significant deterioration in the vision in his left eye", are just two examples of the inadequacies in his medical treatment highlighted by Drs. Rosenberg and Graves. In addition, Mr. Salazar-Espinosa points out that the BOP has denied him adequate care and basic needs by providing "inadequate follow-up treatment and monitoring of both eyes," "no vision therapy," "no specialized glasses," and "no improved lighting."[14] Based upon the record of his medical treatment, the Court agrees with the defendant that "given the BOP's track record, there can

---

[12] *Bary*, 2020 WL 5946985, at *2 (quoting *Washington v. Ban*, 925 F.3d 109, 118-19 (2d Cir. 2019)).

[13] *See United States v. Johnson*, No. 16-cr-319 (NGG), 2023 WL 3093617, at *8 (E.D.N.Y. Apr. 26, 2023) ("Given the denial or lack of response that is virtually assured to follow [the defendant's] request to the BOP for compassionate release, this court finds that requiring [the defendant] to exhaust his administrative remedies before evaluating his motion would be futile and unlikely to result in adequate relief.").

[14] Dkt 219 (Def. Resp. Mem.) at 5.

6

be no confidence that the necessary care [would] be provided, notwithstanding any and all requests that will be made by defendant or by another inmate on his behalf."[15]

The factors set forth in Section 3553(a) weigh also in favor of granting Mr. Salazar-Espinosa compassionate release. His offense, albeit nonviolent, undoubtedly was serious. The Court acknowledges the deterrent and punitive value of requiring the defendant to serve his entire sentence in prison. However, the facts and circumstances here – that Mr. Salazar-Espinosa is "experiencing an increasing *and permanent* disability (loss of vision)," that he is "highly unlikely to recidivate" at his age and with his disabilities, and that he has served more than half of his sentence – all counsel in favor of his release.[16] The potential public interest in seeing the defendant incarcerated for another approximately seven years does not outweigh the risk that he will become even more seriously ill or disabled as a result of not receiving adequate medical care while he is in custody.

For the foregoing reasons, the Court is disposed to grant the defendant's motion (Dkt 195) upon the filing of a consent by the defendant, approved as to form by the government, to (1) the transfer of the defendant from the custody of the BOP to the custody of United States Immigration and Customs Enforcement ("ICE") pursuant to the existing detainer, (2) the immediate removal of the defendant by ICE to Colombia, and (3) an order of this Court prohibiting the defendant from reentering or being found in the United States following his removal from this country by ICE.[17]

SO ORDERED.

Dated: September 12, 2023

_____
Lewis A. Kaplan
United States District Judge

---

[15] *Id.* at 4.

[16] Dkt 219 (Def. Resp. Mem.) at 7-8 (emphasis in original).

[17] Mr. Salazar-Espinosa has stated that upon his release, he intends to return to Colombia. *E.g.*, Dkt 195 (Def. Mem.) at 13, 15; Dkt 219 (Def. Resp. Mem.) at 7.